**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>FLOYD CLIFFORD COATES, JR.,<br>Defendant. | No. CR24-4021-LTS-KEM<br>**MEMORANDUM OPINION AND ORDER** |

## *I. INTRODUCTION*

This matter is before me on a renewed motion (Doc. 238) for judgment of acquittal filed by defendant Floyd Clifford Coates, Jr. The Government has filed a resistance (Doc. 254). Oral argument is not necessary. *See* Local Rule 7(c).

## *II. FACTUAL AND PROCEDURAL BACKGROUND*

Coates was charged by superseding indictment (Doc. 58) with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(c) and 846 (Count 1), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2), one count of conspiracy to conceal objects with the intent to impair their availability for an official proceeding in violation of 18 U.S.C. §§ 1512(c)(1) and 1512(k) (Count 3), one count of concealing objects with the intent to impair their availability for official proceedings in violation of 18 U.S.C. §§ 2 and 1512(c)(1) (Count 4), one count of using the threat of physical force against another with the intent to conceal objects with the intent to impair their integrity or availability for use in an official proceeding in violation of 18 U.S.C. §§ 2, 1512(a)(2)(B)(ii) (Count 5), one count of using the threat of physical force against another with the intent to hinder, delay, or prevent the communication to a law

enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense in violation of 18 U.S.C. §§ 2, 1512(a)(2)(C) (Count 6) and two counts of possession of ammunition by a felon and a drug user and an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1) and (3) and 924(a)(2) and 924(e)(1) (Counts 7 and 8).

A jury trial began November 12, 2025. The Government presented testimony from 54 witnesses and entered 146 exhibits into evidence. *See* Doc. 185-1. Co-defendant Dennis Lawson entered one exhibit into evidence and Coates entered one exhibit into evidence. *Id.* At the close of the Government's case, Coates made a general Rule 29(a) motion for a judgment of acquittal on all counts. Doc. 184. I reserved ruling on the motion. *Id.* On November 25, 2025, the jury returned a verdict (Doc. 187) finding Coates not guilty on Counts 5 and 6 and guilty on the remaining counts. Coates now renews his motion for a judgment of acquittal on Counts 3 and 4.

## *III. DISCUSSION*

### *A. Applicable Standards*

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. *See* Fed. R. Crim. P. 29(c). Jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court views the evidence "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005) (internal quotations omitted). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006).

Moreover, courts "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). Additionally, courts should not reconsider the credibility of the witnesses, as that is a task for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

***B. Parties' Arguments***

Coates argues the evidence was insufficient to sustain a conviction on Counts 3 and 4 because the Government did not establish that he contemplated a particular, foreseeable proceeding in which the object or objects at issue might be material. He notes the jury was instructed that the contemplated proceeding includes one before a federal judge, court, or grand jury, but not a state proceeding, and that the term "official proceeding" means a proceeding before a judge or court of the United States, a United States magistrate judge or a federal grand jury. Doc. 164-1 at 16, 19-20. Coates argues that none of the evidence showed that he acted in contemplation of a particular proceeding.

The evidence consisted of testimony from various law enforcement witnesses that investigations into allegations of kidnapping, illegal drugs and firearms may result in federal charges, and that federal search warrants were ultimately issued. The concealment of objects, as alleged in Counts 3 and 4, occurred before the commencement of investigations and the issuance of federal search warrants. Coates contends the Government failed to present evidence that he acted in contemplation of a future official proceeding at the time he allegedly disposed of the victim's body and possessions.

Further, with regard to the conspiracy to conceal objects count (Count 3), Coates argues that no rational jury could conclude from the evidence that Coates reached an agreement with any other person to conceal objects with the intent to impair their availability for an official proceeding. He notes that S.M. did not indicate that she and Coates reached any implicit or explicit agreement to conceal objects, as she testified she

saw a woman's body in Coates' vehicle, that Coates told her the victim had overdosed and that S.M. drove Coates' vehicle, eventually driving to Lawson's garage. S.M. then stayed inside the residence while Coates and Lawson went to the garage. Coates and Lawson later told S.M. to clean out the vehicle, at which time she observed the body was gone. S.M. testified that Lawson threatened her not to say anything. Coates observes that Lawson was the named co-conspirator in Count 3 but was acquitted on that count. However, Lawson was found guilty on Count 6 of threatening S.M. with physical force with the intent to hinder communication to a law enforcement officer. Coates argues that this verdict endorses S.M.'s view that she was an innocent party to any alleged conspiracy. With no other potential co-conspirators, Coates argues he cannot be found guilty of being in a conspiracy to conceal objects as alleged in Count 3.

The Government responds by emphasizing that Coates was charged with (and convicted of) conspiracies to obstruct justice and distribute methamphetamine as well as the substantive obstruction offense and firearms offenses. While the Government argues all elements of Counts 3 and 4 are supported by sufficient evidence, it contends that with respect to Coates' argument, his words, actions and the context of the coverup reveal that he contemplated a particular proceeding – a proceeding in connection with the disappearance and death of the victim and/or his drug conspiracy. The Government emphasizes that it does not have to prove an official proceeding was pending (or about to be instituted) at the time of the obstruction. It further notes that it does not have to prove that Coates knew or should have known that the proceeding was a federal one, but argues the evidence established that Coates did contemplate a particular federal proceeding in connection with the disappearance and death of the victim and/or the drug conspiracy.

Even if Coates did not contemplate a federal proceeding in connection with the disappearance and death of the victim and/or the drug conspiracy, the Government argues that the verdicts against him on Counts 3 and 4 should stand. The Government contends that Coates contemplated a particular proceeding that would hold him accountable for the disappearance of the victim and the related drug conspiracy and those proceedings were,

in fact, federal proceedings. The Government cites Coates' statements to others regarding the lack of a body, avoiding a murder charge and dodging the FBI.

Finally, with regard to the conspiracy verdict, the Government argues that the only question that matters is whether the Government presented sufficient evidence to support the conviction, regardless of inconsistent verdicts. It cites *United States v. Fuller*, 374 F.3d 617, 623 (8th Cir. 2004), in which the defendant was convicted of conspiracy even though his stepson (and alleged co-conspirator) was acquitted. It argues the evidence shows a common plan between S.M., Lawson and Coates to support a finding that an agreement existed.

### *C. Whether Coates Contemplated a Particular, Foreseeable Proceeding*

Both Counts 3 and 4 involve a violation of 18 U.S.C. § 1512(c)(1), which provides:

> (c) Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Section 1512(f) provides:

> (f) For the purposes of this section –
>
> (1) an official proceeding need not be pending or about to be instituted at the time of the offense; and
>
> (2) the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

Finally, section 1512(g) provides:

> (g) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance –

(1) that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or

(2) that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

The jury was instructed that the three elements the Government needed to prove for the offense of concealing objects with the intent to impair their availability for official proceedings were:

> *One*, between on or about April 20, 2019, and February 19, 2025, the defendant altered, destroyed, mutilated, or concealed an object or objects;
>
> *Two*, defendant acted corruptly; and
>
> *Three*, defendant acted with the intent to impair the object's, or the objects' integrity or availability for use in one or more of the following proceedings:
>
> (a) trial before a United States district court judge;
> (b) sentencing before a United States district court judge;
> (c) pretrial motions before a United States magistrate judge; or
> (d) an investigation by federal grand juries involving the disappearance and death of [the victim] and/or the drug conspiracy alleged in Count 1 of this Indictment in the Northern District of Iowa and/or in the District of Nebraska.

Doc. 164-1 at 19. The jury was also instructed:

> An official proceeding need not be pending or about to be instituted at the time of the offense. However, the Government must prove beyond a reasonable doubt that the defendants foresaw the particular official proceeding.
>
> There are four official proceedings identified in Count 4. The Government need not prove beyond a reasonable doubt that a defendant

> intended to obstruct all of these proceedings. Instead, the Government must prove beyond a reasonable doubt that a defendant intended to obstruct at least one of these official proceedings. You must unanimously agree as to which official proceeding the defendant intended to obstruct.
>
> The Government must prove beyond a reasonable doubt that the defendant contemplated a particular, foreseeable proceeding in which the object or objects at issue might be material. The contemplated proceeding includes one before a federal judge, court, or grand jury, but not a state proceeding. However, the Government does not need to prove that a defendant knew or should have known that the proceeding was a federal one.
>
> A person acts "corruptly" if he or she acts with the purpose of wrongfully impeding the due administration of justice.

*Id.* at 20. These same instructions were provided in the conspiracy count (Count 3) in the context of the elements necessary to prove a conspiracy.

Coates raises two issues. As to Counts 3 and 4, he argues there is insufficient evidence that he "contemplated a particular, foreseeable proceeding in which the object or objects at issue might be material." As to Count 3, he also argues there is insufficient evidence of an agreement between two or more people.

In considering whether a defendant contemplated a particular foreseeable proceeding, the Eighth Circuit has held that a general concern about going to prison is insufficient. *United States v. Goodlow*, 171 F.4th 1106, 1112 (8th Cir. 2026) (noting in the context of a witness tampering charge under § 1512(c)(2), defendant's statements that he would be "took away to jail again" and testimony that he knew he could go to jail for the minor victims' sexual abuse accusations was not enough to prove defendant contemplated a particular proceeding). In addition, the interstate nature of a defendant's conduct does not automatically demonstrate that the defendant contemplated a particular official proceeding. *See United States v. Abdullahi*, 144 F.4th 1034, 1041-44 (8th Cir. 2025). In *Abdullahi*, the defendant threatened a victim at gunpoint and ordered her to drive across state lines and attempt to withdraw funds from an ATM. *Abdullahi*, 144

F.4th at 1036. He was arrested on state robbery and kidnapping charges and placed into state custody. While in custody, he was interviewed by local police and was not aware that federal agents were also listening in. *Id.* After the interview, he made several phone calls to family members, suggesting they find the victim and give her money to hide and stating that if the victim came forward he would get "[redacted] years." *Id.* at 1036-37.

The defendant was later indicted in federal court on one count of kidnapping. He again made phone calls explaining that he was facing federal charges and again suggesting that the "whole problem" would go away if the victim did not come forward or wrote a letter saying he was not the suspect. *Id.* at 1037. The defendant was charged in a superseding indictment with kidnapping and attempted witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and (2).

The Government relied only on the first phone call as evidence that the defendant contemplated an official proceeding. The Eighth Circuit found this insufficient because the defendant was in state custody on state charges, had been interrogated by a state officer and had been scheduled only for state proceedings. *Id.* at 1041. Because he had not been told and did not know he was under federal investigation, or that additional charges might be filed, the court questioned how he could have contemplated an additional proceeding. The court also rejected the argument that the interstate nature of the charges was sufficient, stating that "incidentally crossing state lines is not sufficient to show that a defendant actually contemplated an official proceeding, especially where, as here, [the defendant] traveled within a single metro area." *Id.* at 1042.

To the extent the Government argued that some crimes are inherently federal, the court noted that the Government failed to offer such evidence to the jury and, more importantly, the question was not whether the defendant was contemplating facing criminal charges, but contemplating a particular proceeding. Because the phone call indicated that he was thinking only of his pending state case, the court rejected that line of reasoning. *Id.* at 1042. The court also considered the defendant's statement regarding

the number of years he would receive if the victim came forward, noting that nothing connected the statement to anything other than state proceedings. *Id.* at 1042-43.

Based on this analysis, the Eighth Circuit concluded there was no evidence the defendant foresaw anything other than state proceedings at the time he made the relevant witness tampering statements. The court acknowledged that the Government was not required to prove the defendant knew he was being investigated by federal authorities, or that an official proceeding was pending or that defendant knew it was federal. *Id.* at 1044. Nonetheless, the court held that the Government was required to prove that he actually contemplated a particular, foreseeable proceeding beyond what he already faced. The court found the evidence was insufficient as to that question and vacated his conviction for attempted witness tampering. *Id.* at 1044.

Similarly, in *United States v. Petruk*, 781 F.3d 438, 440-41 (8th Cir. 2015), the defendant was in custody on state charges when he attempted to secure false alibi witnesses. The court concluded that the defendant did so for purposes of his upcoming proceedings in state court. *Id.* at 445. In both *Goodlow* and *Petruk*, the court noted that there were no federal indictments or investigations pending at the time of the alleged obstructive conduct, even though the court acknowledged that the proceeding need not be pending or about to be instituted at the time of the offense. *See Goodlow*, 171 F.4th at 1112 (noting when the defendant engaged in witness tampering "no criminal investigation was underway, and the FBI was not even notified until the next day."); *Petruk*, 781 F.3d at 446 ("Moreover, the Government failed to produce any evidence that Petruk was under federal investigation in December 2012, much less that Petruk was aware of such investigation at that time."). Even if a federal investigation was pending at the time of the obstructive conduct, more is required to prove the defendant's contemplation of such an investigation. *See Abdullahi*, 144 F.4th at 1043 ("That Abdullahi's interrogation was secretly observed by federal agents certainly proves that an additional federal proceeding was likely; it does not prove, however, that Abdullahi actually contemplated that proceeding.").

By contrast, the Eighth Circuit has found this element established when there was evidence that a defendant in state custody was contemplating a federal felon-in-possession charge. *See United States v. Richardson*, 92 F.4th 728, 731 (8th Cir. 2024). In *Richardson*, the defendant's recorded phone calls from jail indicated he was discussing a federal felon in possession charge with an unknown male. The unknown male referred multiple times to "the feds" and "going federal" with regard to the felon in possession charge. *Richardson*, 92 F.4th at 731. After those phone calls, the defendant called the victim, asked her to change her story and referenced that he might "go fed" if the gun was found. The court found this evidence sufficient that the defendant was contemplating a particular, foreseeable prosecution even if it was not yet pending or about to be instituted. *See also United States v. Mink*, 9 F.4th 590, 610 (8th Cir. 2021) (concluding the defendant had contemplated a particular, foreseeable proceeding because he instructed individual to destroy object and to sign a false affidavit after law enforcement searched his house and expressly acknowledged that the government was building a case against him).[1]

As the Government observes, Coates was neither awaiting state proceedings nor in state custody when he engaged in the obstructive conduct. It also notes that unlike in *Abdullahi*, the Government produced evidence to support the inference that defendant foresaw federal prosecution by presenting evidence that Coates was an armed drug dealer, engaged in a multi-state drug conspiracy and was on a multi-state drug run when he killed the victim. It notes that Coates was also repeatedly interrogated by Special Agents of the

[1] In a very recent decision, the Eighth Circuit affirmed a conviction under § 1512(c)(1) with no discussion of the requirement that the defendant contemplated a particular, foreseeable proceeding when she engaged in the obstructive conduct. *See United States v. Marr*, ___ F.4th ___, 2026 WL 1490129 (8th Cir. May 28, 2026). In *Marr*, the defendant committed a murder by virtue of blunt force trauma to the victim's head and then covered the victim's injuries with makeup before calling 911. 2026 WL 1490129, at **1, 6. In finding the evidence sufficient to support convictions for second-degree murder and tampering with proceedings, the court did not analyze the issue of whether the defendant contemplated a particular, foreseeable proceeding, at the time of the obstructive conduct.

FBI while the conspiracy to obstruct and substantive obstruction continued and that Coates even admitted to one agent that he had destroyed the SIM card to his cell phone when he thought the FBI was listening in on phone. The Government distinguishes *Goodlow* by arguing Coates was worried about federal prosecution before he began his obstructive conduct and, once the FBI overtly joined the investigation, Coates continued that conduct, admitting to avoiding the FBI and destroying his SIM card to prevent the FBI from monitoring his conversations.

I find it helpful to begin with the alleged obstructive conduct. The Government argues the altering, destroying, mutilating and concealing of objects includes concealing the victim's body, burning her personal effects, cleaning out Coates' vehicle, turning off his phone and breaking his SIM card when he thought the FBI was listening to him, hiding the firearm in his wife's vehicle at the edge of his property, lying to the FBI and removing the floor mats from his vehicle that were later found in his home and contained the victim's DNA. Doc. 254 at 7-8. This is consistent with what the Government argued to the jury. Doc. 227 at 27-32.

With regard to proof that Coates contemplated a particular, foreseeable proceeding when he engaged in the obstructive conduct, the Government relies on the context of the coverup as well as Coates' statements and actions. As to context, the Government cites evidence that Coates was an armed drug dealer, engaged in a multi-member, multi-pound, multi-state, drug conspiracy and was on a multi-state drug resupply run and had just killed the victim, either by an intentional or accidental overdose or worse. It notes the evidence showed he then drove a lengthy distance, through a rural area and across a bridge spanning the Missouri River, to return to Iowa to get help from Lawson to conceal evidence. The Government distinguishes *Abdullahi*, noting that the state line Coates crossed was not part of a larger metropolitan area but was clearly delineated. The Government argues that the jury heard a great deal of evidence regarding federal kidnappings resulting in death charges, federal distributions resulting in death charges, the particulars of Coates' drug conspiracy and the nature of the area where the crimes

occurred. It contends that Coates knew he was travelling interstate and was engaged in distinctively federal conduct.

The jury also heard testimony that missing person cases and kidnappings are part of the core responsibilities of the FBI. Witnesses who were part of Coates' drug conspiracy, or had knowledge of it, testified they were aware of the possibility of federal law enforcement investigating their drug activities. The Government notes the FBI became involved on April 29, 2019, and visited Coates' residence on May 1, 2019. The investigation led to the execution of federal search warrants, two federal grand jury investigations, an indictment and superseding indictment.

As to Coates' statements and actions, the Government cites the following:

- Electronic communication with Taylor Brown[2] in which Brown texted Coates on April 3, 2019, "Tell that pussy idk who he is I mean if it was the feds bro they wouldn't foul up like that" and on April 30, 2019, "The feds was talking to me lol not even lieu g [sic]." Doc. 218 at 144, 192; Doc. 199-1; 199-13. Brown testified that he and Coates spoke about the feds on more than one occasion. *Id.* at 193.

- Derek Baxter testified that on April 30, 2019, Coates was at his house when the FBI knocked on the door and neither of them answered. Doc. 219 at 63; Doc. 221 at 85.

- In a May 11, 2019, text exchange with Victoria Arriola, Coates told her "Phone broke need to put sims card into another one when I get one" and "Ya I'm just dodging the same people that u are they want me for questioning lol." When Arriola asked if it was about that missing person, Coates said "Ya but what's crazy is I really didn't do anything this time." Doc. 205-10. Coates also asked her about an app to hide his GPS location. Doc. 219 at 173-78.

- On May 31, 2019, Coates told FBI Special Agent Noah Heflin that he had shut off his phone and broken his SIM card when he thought he heard the FBI listening in on him. Doc. 222 at 132. A phone with a broken SIM card was found during a search of Coates' home that day. Doc. 203-1 at 63.

---

[2] Brown was part of Coates' drug conspiracy. Doc. 281 at 112-14, 144.

- On April 8, 2024, Coates lied to FBI Special Agent Eli McBride about his role in the victim's disappearance and told McBride that he thought the "feds" were on the case within 6 hours of the victim's disappearance. Doc. 205-14.

- While awaiting trial, Coates told a former inmate that the "feds" were investing the victim's disappearance just 16 hours after Coates left with her and that he had fouled up because he told the FBI he had crossed a state line with her. Doc. 220 at 58, 72. He also said Lawson helped him clean up the crime and was mad because Coates had gotten him involved with the FBI. *Id.* at 76.

The question is whether at the time of altering, destroying, mutilating and concealing objects, Coates contemplated a particular, foreseeable proceeding. This is a fact-specific inquiry. The Eighth Circuit precedent discussed above does not provide a definitive answer due to significant factual distinctions. Unlike *Abdullahi* and *Petruk*, Coates was not facing state charges, nor in state custody, at the time of his obstructive conduct. Thus, there is not a strong argument that any particular proceeding he was contemplating was state rather than federal. In addition, there are numerous indicators here that any particular, foreseeable proceeding Coates was contemplating at the time of obstructive conduct was federal. This is based on his multi-state drug conspiracy and his interstate travel before and after the victim's death and later, his acknowledgment that the FBI was involved and that he was a target of their investigation.

This evidence makes this case factually closer to *Richardson*, in which the defendant discussed with another individual the potential federal charge he was facing shortly before he engaged in the obstructive conduct. *See Richardson*, 92 F.4th at 731. Indeed, the Government presented evidence that Coates' coconspirators were aware of the federal implications of their drug conspiracy and, in some instances, discussed such with Coates. *See* Doc. 218 at 144 (in which Taylor Brown testified as follows: "Q: So while you're dealing drugs with Coates, you're at least aware of the possibility of federal law enforcement? A: Yes."); *Id.* at 225, 236 (in which Tina Smith, a coconspirator, testified that it was a risk of the trade that they could be federally indicted for distributing methamphetamine and she had expected she would eventually be federally prosecuted);

*Id.* at 193 (in which Brown acknowledged that he and Coates spoke about "feds" on more than just one occasion); Doc. 199-1 at 6 (text message from Brown to Coates on April 3, 2019, stating "Tell that pussy idk who he is I mean if it was the feds bro they wouldn't foul up like that").

In addition, the evidence here can be factually distinguished from Eighth Circuit cases in which the evidence was insufficient as to this element. For instance, in *Abdullahi*, the court rejected an argument that the interstate nature of the robbery and kidnapping was sufficient to put Abdullahi on notice that he could face federal charges because the Government did not offer any evidence to that effect. *Abdullahi*, 144 F.4th at 1042. Here, the Government presented testimony from Benjamin Gill with the Iowa Division of Narcotics Enforcement (assigned to the Drug Enforcement Administration Tri-State Drug Task Force) about the factors used to decide whether drug cases are prosecuted federally. Doc. 218 at 41. Many of those factors were present in this case including the use of firearms, the amount of drugs and the type of drugs (methamphetamine) being distributed. Gill also testified that if the investigation is interstate it will likely lead to a federal prosecution. *Id.* at 41-42. He noted that distribution of methamphetamine and distribution resulting in an overdose death are federal crimes. *Id.* Specifically, he testified that a drug-trafficking organization with multiple members moving multiple pounds of methamphetamine between multiple states would be a distinctively federal case. *Id.* at 58-59.

The Government also presented evidence regarding Coates' interstate movements before and after victim's disappearance, as well as Coates' own understanding of the federal implications of crossing state lines. *See* Doc. at 24, 48-51, 61-62 (in which S.M. testified she met Coates in Blair, Nebraska, then drove to somewhere in the area of Decatur, Nebraska, and Onawa, Iowa, before ending up at Lawson's house (in Whiting, Iowa) and then ending up back in Decatur); Doc. 220 at 72 (in which Geovanni Flood, who was housed with Coates at the O'Brien County Jail, testified Coates told him he

thought the FBI was involved because he had told them he brought the victim into Iowa and crossed state lines).

While there are no factually identical cases in the Eighth Circuit examining this element of a § 1512(c)(1) violation, this case is factually closer to *Mink* and *Marr*. In *Marr*, the evidence suggested an attempted cover-up in which the defendant's boyfriend was found unresponsive with bruising on his head and face covered by makeup. *Marr*, 2026 WL 1490129, at *6. The defendant was convicted of second-degree murder and tampering with documents or proceedings in violation of § 1512(c)(1). While the court did not analyze whether the defendant had contemplated a particular, foreseeable proceeding at the time she applied makeup to the victim, the court found the evidence was sufficient to sustain the conviction. Similarly here, the Government presented evidence that Coates attempted to cover up his involvement by disposing of the victim's body and her personal belongings shortly after her death and was even more successful than the defendant in *Marr*, as the victim's body has not been recovered. Moreover, the Government presented evidence of Coates' own statements suggesting he concealed the victim's body and her personal belongings to prevent their use in an official proceeding. *See* Doc. 220 at 211 (in which a fellow inmate testified that when Coates was speaking with him about the missing victim, he used the phrase "no body, no crime."); *Id.* at 238 (in which another fellow inmate testified Coates told him "[t]hey can't get me a murder charge if they don't have the body; right?").

Even if Coates was not contemplating a particular, foreseeable proceeding at the time of the disposal of the victim's body and her belongings, those were not the only obstructive acts identified by the Government. The Government argued Coates continued to engage in a conspiracy to conceal objects with the intent to impair their availability for official proceedings after Easter weekend 2019. For example, it alleged that Coates destroyed his phone's SIM card, hid his gun, lied to the FBI and removed the floor mats

from the vehicle.[3] The evidence concerning Coates' state of mind during later of obstructive acts is even stronger as Coates had at least some awareness (or perception), by April 30, 2019, that he was the target of the FBI's investigation into the victim's disappearance.[4] On that date, agents appeared at Baxter's residence. Doc. 221 at 85.[5] Baxter testified that about a week after Easter weekend 2019, Coates called Baxter and said he needed to get away from his residence because law enforcement was looking for him. Doc. 219 at 62. Coates was at Baxter's house when the FBI came to Baxter's door, but neither of them answered. *Id.* at 63. Brown also messaged Coates that day "[t]he feds were talking to me lol not even lieu g [sic]." Doc. 199-13 at 1.

*Mink* demonstrates that these later obstructive acts are sufficient to demonstrate a defendant was contemplating a particular, foreseeable proceeding at the time he engaged in the initial obstructive conduct. *Mink*, 9 F.4th at 610 ("Here, Mink's actions – i.e., instructing Stevens to destroy a detonator after law enforcement had searched the house and to sign a false affidavit – by their very nature evince that Mink contemplated criminal liability in a future proceeding."). On May 11, 2019, Coates told Victoria Arriola he had broken his phone, was "dodging" the FBI and was looking for an app to disguise his movements because the FBI wanted to talk to him about the missing person. *See* Doc. 219 at 174-76; Doc. 205-10. Coates later confirmed he had shut off his phone and broken his SIM card when he spoke with FBI Special Agent Noah Heflin on May 31, 2019. Doc. 222 at 132 (testifying that Coates said the minute he heard the FBI on the other end

---

[3] Coates did not respond to the Government's arguments concerning other obstructive acts.

[4] Coates' own statements suggest that his awareness or perception of the FBI's involvement was actually much earlier. *See* Doc. 205-14 (in which Coates told an FBI Special Agent that he thought the "feds" were on the case within six hours of the victim's disappearance); Doc. 220 at 58, 72 (in which a fellow inmate testified Coates told him the "feds" were on him 16 hours after the victim's disappearance).

[5] The FBI went to Coates' residence on May 1, 2019. They seized his vehicle, which was missing the floor mats. *See* Docs. 221 at 86, 254 at 8, n.6.

of his phone when it was turned off he broke his SIM card). A phone with a broken SIM card was found during a search of Coates' home on May 31, 2019. Doc. 203-1 at 63.

When viewing all of the evidence in a light most favorable to the Government, and giving all appropriate deference to the jury's verdicts, I find the evidence was sufficient to establish this element as to both Counts 3 and 4. Because Coates does not challenge any other aspect of his conviction on Count 4, his motion as to that count is denied.

### *D. Whether Coates Reached An Agreement with Another Person*

With regard to Count 3, Coates raises the additional challenge that the evidence was insufficient to establish that he reached an agreement with anyone to conceal objects with the intent to impair their availability for an official proceeding. He notes S.M. did not testify she reached any implicit or explicit agreement to conceal objects and Lawson, the named coconspirator in Count 3, was acquitted of this conduct.

I agree that S.M. and Lawson are the only two potential coconspirators on this count, but disagree the evidence is insufficient to sustain Coates' conviction. As the Government points out, "[a]n agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case." *United States v. Garcia-Hernandez*, 530 F.3d 657, 661 (8th Cir. 2008) (quoting *United States v. Rodriguez-Mendez*, 336 F.3d 692, 695 (8th Cir. 2003)).

With regard to S.M., the evidence showed that Coates had texted her on Easter weekend 2019 to meet him in Blair, Nebraska. Doc. 224 at 24-25. He told S.M. he had a girl or woman with him. *Id.* at 27-28. While it is not clear at what time the victim died, Coates knew S.M. was on her way to meet him in Blair and he did not cancel those plans or otherwise try to prevent S.M.'s involvement. Once S.M. arrived, she put her belongings in the vehicle and went into the residence with Coates. Later, as she was getting ready to leave with Coates, S.M. observed the body of the deceased victim. *Id.* at 32-42. At that point, Coates could have left S.M. or S.M. could have refused to drive

Coates' vehicle, but they both left in the vehicle. *Id.* at 36. They eventually drove to Lawson's house in Iowa where, again, Coates could have ended S.M.'s involvement or S.M. could have exited the situation. *Id.* at 49. When they went into the house, either Coates or Lawson (she could not recall who) told her to "act normal" or "don't be weird." *Id.* at 56.

After using methamphetamine with Coates and Lawson and meeting Lawson's girlfriend, Coates and Lawson left, while S.M. stayed in the house. *Id.* at 54-55. When Coates and Lawson returned, they told S.M. to clean the car out, which she did. *Id.* at 55-56. The body was gone at this point and Lawson told her if she said anything it "would be [her] funeral." *Id.* at 57. S.M. drove Coates to Decatur, Nebraska, later that morning or afternoon. *Id.* at 62. She and Coates texted in the weeks following about needing to have a discussion and to be careful. *Id.* at 62-63. She testified that Coates suggested she move out of the area and also instructed her to go see Lawson, which she did. *Id.* at 63-66. S.M. was dating someone who lived just down the road from Lawson and Lawson told her "no pillow talk." *Id.* at 66-67. S.M.'s continued participation in the events of Easter weekend 2019, and her continued communication with Coates and Lawson afterwards, were sufficient for the jury to conclude she and Coates had entered into an agreement to conceal objects with the intent to impair their availability for an official proceeding.

With regard to Lawson, S.M. testified that when she arrived, Lawson was waiting for them in the garage with the garage door open and that he shut the door behind them. *Id.* at 52-53. This suggests some agreement between Coates and Lawson as Lawson was anticipating Coates' and S.M.'s arrival. After using methamphetamine with Coates and S.M., Lawson left with Coates. S.M. testified that when they returned, the body was gone. After instructing S.M. to clean the vehicle, Lawson told her (in Coates' presence) that if she said anything it "would be [her] funeral." *Id.* at 57. This suggests Coates and Lawson conspired together to dispose of the victim's body and had further agreed to involve S.M. in the coverup as well. Although Lawson was acquitted of the conspiracy,

this has no impact on whether the evidence was sufficient to show Coates had entered into an agreement with Lawson. Overall, the facts and circumstances reflect an agreement between Coates and S.M. and/or Lawson to conceal objects with the intent to impair their availability for an official proceeding. Coates' motion as to Count 3 is denied.

## *IV. CONCLUSION*

For the reasons set forth herein, Coates' renewed motion (Doc. 238) for judgment of acquittal on Counts 3 and 4 is **denied.**

**IT IS SO ORDERED** this 18th day of June, 2026.

Leonard T. Strand
United States District Judge